**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
JOHN MUNRO,                             )
                                        )
                Plaintiff,              )
                                        )
        v.                              )        Civil Action No. 11-0098 (ABJ)
                                        )
RAY LAHOOD, Secretary,                  )
U.S. Department of Transportation,      )
                                        )
                Defendant.              )
_____)

## <u>MEMORANDUM OPINION</u>

Plaintiff John Munro brings this action against Ray LaHood, Secretary of the United States Department of Transportation ("DOT"), under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, alleging gender and disability discrimination, retaliation, and hostile work environment by his employer, DOT.  Defendant moves the Court to dismiss the complaint or, in the alternative, to grant summary judgment for defendant [Dkt. # 9].  Defendant contends that the actions plaintiff alleges as discriminatory do not constitute adverse employment actions within the meaning of Title VII, that any alleged discriminatory or retaliatory actions can be explained by legitimate, nondiscriminatory and nonretaliatory reasons, and that the circumstances presented by plaintiff do not rise to the level of severity necessary to make out a hostile work environment claim.  For the reasons stated below, the Court will deny defendant's motion to dismiss as to plaintiff's discrimination and retaliation claims and will grant defendant's motion to dismiss as to plaintiff's hostile work environment claim.

## I.     BACKGROUND

Plaintiff is a male who suffers from post-concussion syndrome, depression, anxiety, and Attention Deficit Disorder.  Compl. ¶ 1.  He was employed by defendant from January 2002 to January 2011 as a GS-14 Program Analyst in the Office of Corporate Research, Technology, and Innovation Management in the DOT Federal Highway Administration ("FHWA").  Compl. ¶ 10. Plaintiff's responsibilities, described by the agency as "critical job elements" ("CJEs"), included providing leadership on intellectual property issues, managing the FHWA Small Business Innovation Research Program, and leading the Office of Research, Development, and Technology's performance management issues.  Compl. ¶ 12; Def.'s Mem. of Law in Supp. of Mot. to Dismiss or, in the alternative, for Summ. J. ("Def.'s Mem.") at Ex. 6.

On June 2, 2009,[1] plaintiff filed a formal complaint against defendant with the Equal Employment Opportunity Commission ("EEOC") for alleged violations of Title VII and the Rehabilitation Act.  Pl.'s Mem. of Law in Opp. to Def.'s Mot. to Dismiss or, in the alternative, for Summ. J. ("Pl.'s Mem.") at Ex. Z.   In the EEO Complaint, plaintiff alleges that his supervisor, Jack Jernigan, discriminated against him on the basis of his sex and disability when Jernigan disciplined him for allegedly threatening a female co-worker but did not discipline the female co-worker or verify her allegations.  *Id.*[2]  Further, he alleges that defendant retaliated

---

[1]     Plaintiff's complaint states that plaintiff filed the EEO Complaint in May 2009, Compl. ¶ 17, and defendant states that plaintiff filed the complaint in April 2009, Def.'s Statement of Material Facts as to Which There Is No Genuine Dispute ¶ 3.  But the EEO Complaint itself and subsequent pleadings refer to the filing date as June 2, 2009.

[2]     The Court, on a motion to dismiss, may consider "any documents either attached to or incorporated [by reference] in the complaint."  *Williams v. Chu*, 641 F. Supp. 2d 31, 34 (D.D.C. 2009) (alteration in original), quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  Although plaintiff did not attach his EEO complaint to his pleadings, it is incorporated by reference in his complaint. Compl. ¶ 17.  Thus, the Court may properly consider the contents of the EEO Complaint on the motion to dismiss.

against him when he brought the incident to the attention of the EEOC office prior to filing his formal EEO Complaint.  Compl. ¶ 17.  Plaintiff claims that, before filing the EEO Complaint, he "had never been counseled or disciplined for performance-related matters."  Compl. ¶ 18.

On November 5, 2009, Mr. Jernigan notified plaintiff that he had received a "Fails to Meet Requirements" performance rating on several of his CJEs and that he would be placed on a Performance Improvement Plan ("PIP") as a result.  Def.'s Mem. at Ex. 6.  The PIP memorandum stated that plaintiff's performance had "declined" since October 2008 and that "the deficiencies were noted at [plaintiff's] mid-year evaluation and in numerous meetings since."  *Id.* According to the terms of the PIP, plaintiff had 90 days[3] from the date of the memorandum to improve his performance rating to at least "Meets or Exceeds Requirements," and if he was unable to do so, plaintiff would "be subject to removal . . . after a further opportunity period in which to demonstrate acceptable performance."  *Id.*

Plaintiff's progress while on the PIP was monitored and documented by Mr. Jernigan, who provided plaintiff with written feedback on his progress after 30 and 60 days, on December 7, 2009 and January 14, 2010, respectively.  *See* Def.'s Mem. at Ex. 3.  In the 30-day evaluation, Mr. Jernigan told plaintiff: "[y]ou made efforts to advance some initiatives, but your work continues to lack in terms of volume produced, quality/completeness, level of supervision required, and demonstrated performance at the GS-14 level."  *Id*.  Mr. Jernigan reiterated these concerns in the 60-day evaluation, informing plaintiff that "[y]ou are moving in the right direction, but are not there yet."  *Id.*  Ultimately, plaintiff failed to attain a "Meets or Exceeds Requirements" rating, and he received a rating of record of "Fails to Meet Requirements." Def.'s Mem. at Ex. 1.

---

3       Plaintiff ultimately received an extension until February 22, 2010.  Def.'s Mem. at Ex. 1.

On February 26, 2010, plaintiff was notified of the "Fails to Meet Requirements" rating and informed that he would be given a Final Opportunity Period ("POP") of 90 days to bring his performance up to the "Meets or Exceeds Requirements" level.  Def.'s Mem. at Ex. 1.  Unlike the terms of the PIP, the terms of the POP stated that if plaintiff failed to obtain a "Meets or Exceeds Requirements" rating at the close of his POP, he would "be subject to some type of formal action which could include demotion, reassignment, or removal."  Def.'s Mem. at Ex. 6. During a meeting on his PIP performance held the same day, plaintiff alleges that Mr. Jernigan "yelled at him."  Compl. ¶ 23.  Moreover, presumably at some point prior to being put on the POP, plaintiff also alleges that he was told he could no longer submit assignments because "his supervisor had already decided to placed [sic] him on a Performance Opportunity Period." Compl. ¶ 28.[4]

Plaintiff filed this complaint on January 14, 2011 [Dkt. #1].  Counts I, III, and IV[5] allege gender discrimination, retaliation, and hostile work environment in violation of Title VII. Counts II and III allege disability discrimination and retaliation in violation of the Rehabilitation Act.  Defendant has moved to dismiss, or in the alternative, for summary judgment under Fed. R. Civ. P. 12(b)(6) and 56(a) [Dkt. #9].

---

[4]    Upon completion of the POP, for 90 days plus another extension to June 21, 2010, it was determined that plaintiff had "failed to achieve the critical results," Pl.'s Mem. at Ex. QQQ, and plaintiff was ultimately removed from federal service as a result, *id.* at Ex. SSS.  Plaintiff, however, does not does not allege that his removal violates Title VII or the Rehabilitation Act. The Court does not consider any of this information, as it was not attached to or incorporated by reference in the complaint.

[5]    Plaintiff's complaint misnumbers this count as Count I, but the Court will refer to it as Count IV to avoid having two Count Is.

## II.  STANDARDS OF REVIEW

### A.  Motion to Dismiss

"To survive a [Rule 12(b)((6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted); *see Bell Atlantic Corp. v. Twombly*, 555 U.S. 544, 555 (2007) (a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . .") (citations omitted).  In considering a motion to dismiss for failure to state a claim, a court generally "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94, (2007), and "grant plaintiff[] the benefit of all inferences that can be derived from the facts alleged," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  However, the court need not accept a plaintiff's legal conclusions or the inferences he draws if those inferences are unsupported by the alleged facts.  *Id.*  "Nor must the court accept legal conclusions cast as factual allegations."  *Id.*; *see Warren v. District of Columbia*, 353 F.3d 36, 39–40 (D.C. Cir. 2004) (differentiating unacceptable conclusions of law from acceptable conclusions of fact).

In ruling on a Rule 12(b)(6) motion to dismiss, the court "may consider only the facts alleged in the complaint, [and] any documents either attached to or incorporated in the complaint," *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997), or those "documents upon which the plaintiff's complaint necessarily relies . . . produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss," *Hinton v. Corrections Corp. of Amer.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (internal quotation marks and citations

omitted); *accord Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).   In addition, the court

may consider "matters of which . . . judicial notice" may be taken, *St. Francis Xavier Parochial*

*Sch.*, 117 F.3d at 624, such as "public records," *Kaempe*, 367 F.3d at 965 (citations omitted).

### B.  Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  The party seeking summary judgment bears the "initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).   To defeat

summary judgment, the nonmoving party must "designate specific facts showing there is a

genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).  The existence of a factual

dispute is insufficient to preclude summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the

nonmoving party; a fact is only "material" if it is capable of affecting the outcome of the

litigation.  *Id.*; *see also Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

In assessing a party's motion, "[a]ll underlying facts and inferences are analyzed in the

light most favorable to the nonmoving party."  *N.S. ex rel. Stein v. District of Columbia*, 709 F.

Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.  The non-movant may not,

however, rest upon the mere allegations or denials of its pleadings, but must instead establish

more than "the mere existence of a scintilla of evidence" in support of its position.  *Anderson*,

477 U.S. at 252.  The court will "not accept bare conclusory allegations as fact."  *Taylor v.*

*FDIC*, 132 F.3d 753, 763 (D.C. Cir. 1997); *see also District Intown Props, Ltd. P'ship v. District of Columbia*, 198 F.3d 874, 878 (D.C. Cir. 1999) ("[T]he court must assume the truth of all statements proffered by the non-movant except for conclusory statements lacking any factual basis in the record.").

## III.   ANALYSIS

### A.  Plaintiff's Discrimination Claims

Plaintiff claims that he was discriminated against on the basis of his sex and disability[6] in violation of Title VII and the Rehabilitation Act.  Defendant seeks dismissal of plaintiff's discrimination claims on the grounds that plaintiff has failed to establish that he suffered an adverse employment action and has not alleged facts sufficient to "raise a plausible claim that the work related acts were motivated by sex or disability discrimination."  Def.'s Mem. at 9–13.

In order to prove a discrimination claim in the absence of direct evidence of discrimination, plaintiff must establish that he suffered an adverse employment action and that the action gives rise to an inference of discrimination; both are elements of a prima facie case of discrimination under Title VII and the Rehabilitation Act.  *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).  At the motion to dismiss stage, however, a plaintiff need not prove a prima facie case.  *Ali v. District of Columbia*, 697 F. Supp. 2d 88, 91 (D.C. Cir. 2010), citing *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (stating that a Title VII plaintiff "need not set forth the elements of a prima facie case [of discrimination] at the initial pleading stage.") (alteration in original); *see also Winston v. Clough*, 712 F. Supp. 2d 1, 10 (D.D.C. 2010), citing *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) ("[J]udicial inquiry into the prima facie case is usually misplaced . . . .  At the motion to dismiss

---

6      For purposes of its motion only, defendant does not dispute that plaintiff is disabled or that defendant knew of plaintiff's disability.  Def.'s Mem. at 1 n.1.

stage, the district court cannot throw out a complaint even if the plaintiff did not plead the elements of a prima facie case."). Plaintiff need only allege that he "suffered an adverse employment action . . . because of [his] race, color, religion, sex, national origin, . . . or disability." *Baloch*, 550 F.3d at 1196.

Plaintiff alleges a plausible claim of discrimination because he claims to have suffered five adverse employment actions on the basis of his sex and disability: (1) his supervisors placed him on a PIP; (2) his supervisors gave him "distorted performance feedback that was unfavorable"[7]; (3) prior to being placed on a PIP, his supervisors told him he could not submit any more assignments; (4) his supervisor, Mr. Jernigan, yelled at him during a meeting about his PIP; and (5) upon failure to complete his PIP to the satisfaction of his supervisors, his supervisors placed him on an extended POP. Compl. ¶ 28. Defendant argues, however, that none of these alleged actions rise to the level of an adverse employment action because plaintiff has failed to sufficiently allege that any of the actions "tangibly affected him" or caused him "an economic loss or a change in the terms, conditions, or privileges of his employment." Def.'s Mem. at 10–13.[8]

---

[7]    Plaintiff identifies this feedback by referring to the dates on which he received it: December 2009 and January 2010. *See* Compl. ¶ 28. Defendant, in its motion, assumes that the feedback to which plaintiff refers is contained in the two emails documenting plaintiff's progress on the PIP, which were received by plaintiff on December 7, 2009 and January 14, 2010. Def.'s Mem. at 11. Because these two emails are the only documents incorporated into the pleadings that were received by plaintiff during the referenced time periods, the Court will assume that the emails constitute the alleged unfavorable feedback.

[8]    As to the PIP, defendant even goes so far as to say that "[p]laintiff concedes (as he must) that the PIP is not an adverse employment action." Def.'s Reply at 6. Plaintiff, however, only "concedes" that the holding in *Ndonji v. Interpark, Inc.*, No. 09-02547, 2011 U.S. Dist. LEXIS 23668, at 48 (D.D.C. Mar. 9, 2011), establishes that a PIP alone, without evidence of direct economic harm, does not constitute an adverse employment action. Pl.'s Mem. at 22.

An adverse employment action is a "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).  To ultimately establish an adverse employment action, a plaintiff must show that he "experience[d] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm."  *Forkkio v. Powell*, F.3d 1127, 1131 (D.C. Cir. 2002). This harm is usually in the form of "direct economic harm," *Burlington Indus.*, 524 U.S. at 762, such as affecting an employee's grade or salary, *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003).

Plaintiff alleges just enough to make his claim plausible that the alleged actions constitute adverse employment actions:  he claims that "as a direct and proximate result" of each of these actions he has suffered "injuries and losses includ[ing] . . . loss of substantial past and future salary, benefits and entitlements, loss of professional status and career-enhancing opportunities[,] and loss of retirement savings and benefits."  Compl. ¶ 25.  Losses of "substantial past . . . salary, benefits and entitlements" and "retirement savings and benefits" are just the type of direct economic harms that courts have recognized as objectively tangible, *Burlington Indus.*, 524 U.S. at 762.  Moreover, courts have specifically recognized that when PIP placement and negative performance feedback cause these types of harms, those actions rise to the level of an adverse employment action.  *See Taylor*, 350 F.3d at 1293 (finding that a PIP placement did not constitute an adverse employment action on the grounds that plaintiff did not allege that the PIP affected her grade or salary or caused a significant change in her employment status); *Brown v. Brody*, 199 F.3d 446, 457–58 (D.C. Cir. 1999) (noting that "formal criticism or poor

performance evaluations" typically do not constitute adverse employment actions in the absence of direct economic harm).

To survive further dispositive motions, however, plaintiff will need to overcome several hurdles to prove that these actions did in fact cause him direct economic harm. For example, plaintiff's allegations that the PIP and the POP caused him to lose salary and benefits are inconsistent with the memoranda plaintiff received describing the terms of the PIP and the POP. *See* Def.'s Mem. at Ex. 1, 6. According to those documents, only if plaintiff failed to obtain a "Meets or Exceeds Requirements" rating at the close of his POP would he "be subject to some type of formal action which could include demotion, reassignment, or removal." Def.'s Mem. at Ex. 6. Thus, the terms of the placements purport to not affect the terms or conditions of plaintiff's employment,[9] and without proof of objectively tangible harm to employment, the PIP and the POP placements likely would not rise to the level of an adverse employment action. *See Taylor*, 350 F.3d at 1293. *But see Porter v. Shah*, 606 F.3d 809, 818 (D.C. Cir. 2010) (holding that a negative assessment combined with a PIP constituted an adverse employment action). Similarly, most courts have found that being "yelled at" on a single occasion is not an adverse employment action *per se*. *See Baloch*, 550 F.3d at 1199 ("[S]poradic verbal altercations or disagreements do not qualify as adverse actions[.]"), citing *Burlington Indus.*, 548 U.S. at 68 ("[W]e believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth a general civility code for the American workplace.") (internal quotation marks omitted); *see also Moore v. Ashcroft*, 401 F. Supp. 2d 1, 26 (D.D.C. 2005) ("[M]erely being

---

9        Plaintiff claims in subsequent filings that placement on the PIP caused him to lose "career-enhancing assignments," which in turn affected the terms and conditions of his employment. Pl.'s Mem. at 22. This allegation does not change the Court's analysis, however, because plaintiff alleges loss of assignments, or being told he could no longer turn in assignments, as a separate adverse employment action in his complaint. Compl. ¶ 28.

yelled at by your supervisor does not rise to the level of an adverse employment action.")
(internal quotation marks omitted).

Moreover, other harms plaintiff claims he suffered are most likely not actionable.  For
example, plaintiff's claims that the alleged adverse actions caused him to lose "*future* salary,
benefits and entitlements" and "career-enhancing opportunities," Compl. ¶ 26 (emphasis added),
are most likely too speculative to be actionable, *see Edwards v. EPA*, 456 F. Supp. 2d 72, 85–86
(D.D.C. 2006) (An adverse action "must have a discernible, as opposed to a speculative, effect
on the terms, conditions, or privileges of one's employment . . . .   [W]here what an employee
alleges is that he was denied the chance to pursue, at the employer's expense, potentially fruitful
opportunities, he has not pointed to any concrete changes in the terms, conditions, or privileges
of his current or identifiable employment."); *see also Douglas v. Donovan*, 559 F.3d 549, 553
(D.C. Cir. 2009) (noting that the effect of a poor performance evaluation is "ordinarily too
speculative to be actionable").   Further, plaintiff's claims that the alleged actions caused him
"great emotional distress, embarrassment, humiliation, pain and anguish, as well as damage to
his . . . reputation," Compl. ¶ 26, are also not likely to be not actionable, as this Circuit has held
that "purely subjective injuries," such as "public humiliation, or loss of reputation" do not
constitute the objectively tangible harm necessary to establish adverse employment action under
Title VII,  *Holcomb v. Powell*, 433 F.3d 889, 902–03 (D.C. Cir. 2006).

Despite these doubts as to whether plaintiff will ultimately be able to prove that he
suffered an adverse employment action, the Court finds that plaintiff's allegations are sufficient
to survive a motion to dismiss.  *See Ali v. District of Columbia*, 697 F. Supp. 2d 88, 91 (D.D.C.
2010) (denying defendant's motion to dismiss even though "it was unlikely that [plaintiff's]
claims of discrimination [would] ultimately prove meritorious" because plaintiff could not show

he was the subject of an adverse employment action).  Construing the complaint in a light most favorable to plaintiff, as the Court must do at the motion to dismiss stage, plaintiff's allegations are sufficient because he claims he suffered adverse employment actions that tangibly affected the terms, conditions, and privileges of his employment, specifically his salary, benefits, and entitlements.

Alternatively, defendant argues that, even if the Court finds that plaintiff has suffered an adverse employment action, defendant is "entitled to judgment as a matter of law as [d]efendant has legitimate, nondiscriminatory reasons for its actions," Def.'s Reply at 8, and because plaintiff cannot establish that defendant's legitimate explanations for its actions are pretext, Def.'s Mem. at 13–14.  It is true that if this case were at a more advanced stage of litigation, the *McDonnell Douglas* burden-shifting framework would control, and defendant's proffer of legitimate, nondiscriminatory reasons for its actions would shift the burden of production to plaintiff to establish that defendant's reasons are pretext.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  But a plaintiff alleging discrimination at the motion to dismiss stage is not required to negate defendant's proffered explanations for the alleged adverse treatment.  *Rochon v. Gonzales*, 438 F.3d 1211, 1219–20 (D.C. Cir. 2006); *see also Winston*, 712 F. Supp. 2d at 11.

Finally, defendant requests that the Court consider its motion, in the alternative, as a motion for summary judgment [Dkt. # 9].  On this record, the Court declines to do so.  Although some or all of these matters may be amenable to summary judgment, at this time, defendant has not demonstrated that contested issues can be resolved as a matter of law.  For one, there is a genuine factual dispute over whether the alleged adverse actions affected the terms, privileges, and conditions of plaintiff's employment.  *See* Def.'s Mem. at 9–13.  Moreover, defendant claims that plaintiff's allegations with respect to adverse actions "mischaracterize what

occurred." Def.'s Mem. at 6. For example, defendant disputes that plaintiff's assignments were taken away as a result of his placement on the PIP.[10] *See* Compl. ¶ 22; Def.'s Mem. at 17–18. Thus, because neither party has provided the Court with the type of documentation that would permit it to resolve such issues as a matter of law, the motion to decide this case in the alternative on summary judgment will be denied.[11]

### B.  Plaintiff's Retaliation Claim

In Count III, plaintiff claims that defendant, by taking the same adverse actions alleged in Counts I and II, retaliated against him for "his opposition to [d]efendant's unlawful employment practices and his participation in protected activity and the EEO process," particularly plaintiff's filing of an EEO complaint in which he alleged defendant discriminated and retaliated against him in violation of Title VII and the Rehabilitation Act. Compl. ¶ 32. Defendant, although it originally challenged plaintiff's retaliation claims on multiple grounds, now only contends that it is "entitled to judgment as a matter of law due to [d]efendant's legitimate, nondiscriminatory and non-retaliatory reasons for its actions." Def.'s Reply at 8 n.6.[12]

As in the discrimination context, a plaintiff alleging retaliation faces a low burden at the motion to dismiss stage and is not required to show that defendant's proffered reasons for its

---

10    Plaintiff claims that he was "told he could not submit any more assignments because his supervisor had already decided to placed [sic] him on a Performance Opportunity Period." Compl. ¶ 28. Defendant counters that plaintiff did not have work assignments taken away from him; he was only prevented from turning them in after a long weekend because he was not authorized to work overtime. Def.'s Mem. at 11–12, 17–18. Defendant further claims that plaintiff was subsequently allowed to turn in the work. Def.'s Reply at 8.

11    The Court has not considered materials beyond the complaint and the documents incorporated therein by reference, so it need not treat the motion to dismiss as a motion for summary judgment.

12    In its reply to plaintiff's opposition, defendant states that it no longer bases its motion to dismiss the retaliation claim on the argument that the alleged retaliatory actions lack temporal proximity to protected activity. Def.'s Reply at 8 n.6.

actions are pretext.  *Winston*, 712 F. Supp. 2d at 11 (stating that plaintiff faces a "low hurdle" at motion to dismiss stage); *Rhodes v. Napolitano*, 656 F. Supp. 2d 174, 187 (D.D.C. 2009) (finding plaintiff's allegations that materially adverse actions were caused by plaintiff's protected activity "sufficient to survive a motion to dismiss"); *Vance v. Chao*, 496 F. Supp. 2d 182, 185, 187 (D.D.C. 2007) (same).  "[I]n order to survive a motion to dismiss, 'all [the] complaint has to say,' is 'the Government retaliated against me because I engaged in protected activity.'"  *Rochon*, 438 F.3d at 1219–20 (internal citations omitted), quoting *Sparrow*, 216 F.3d at 1114.

Plaintiff has alleged exactly enough to survive a motion to dismiss: he alleges that defendant "retaliated against him for his opposition to defendant's unlawful employment practices and his participation in protected activity and the EEO process."  Compl. ¶ 32. Plaintiff's alleged protected activity is undisputed: he filed a formal EEO Complaint against defendant for alleging sex and disability discrimination and retaliation in violation of Title VII and the Rehabilitation Act.  Compl. ¶ 17; Def.'s Statement of Material Facts as to Which There Are No Genuine Disputes ¶ 3.  Moreover, defendant's only grounds for challenging plaintiff's retaliation claim, that it has proffered legitimate, nondiscriminatory, and nonretaliatory explanations for its actions, are inapposite at the motion to dismiss stage.  *See Winston*, 712 F. Supp. 2d at 11.  Thus, plaintiff's retaliation claim survives defendant's motion to dismiss because plaintiff alleges that defendant retaliated against him because he engaged in protected activity.

### C.  Plaintiff's Hostile Work Environment Claim

Finally, plaintiff alleges that defendant, by taking the same actions alleged as adverse in the preceding discrimination and retaliation claims, subjected him to a hostile work environment

in violation of both Title VII and the Rehabilitation Act.[13]   Defendant contends that plaintiff's hostile work environment claims should be dismissed because "[p]laintiff has made no allegation from which one can infer gender discrimination or disability discrimination" and his claim is "based solely on work-related actions."  Def.'s Reply at 11–12; *see also* Def.'s Mem. at 20.

To make out a hostile work environment claim, a plaintiff must demonstrate that the "workplace is permeated with discriminatory intimidation, ridicule, and insult" and that this behavior is "sufficiently severe or pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993).  "To determine whether a hostile work environment exists, [courts] look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002), quoting *Harris*, 510 U.S. at 23; *see also Baloch*, 550 F.3d at 1201.

Although a plaintiff is not required to plead a prima facie case of hostile work environment in the complaint, *Ali*, 697 F. Supp. 2d at 92, the alleged facts must be able to support such a claim, *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 78 (D.D.C. 2007), citing *Sparrow*, 216 F.3d at 1114.  And "mere reference to alleged disparate acts of discrimination cannot be transformed, *without more*, into a hostile work environment."  *Childs-Pierce v. Util.*

---

13     It is unclear whether plaintiff actually alleges a hostile work environment claim under the Rehabilitation Act.  In the first paragraph of his complaint, he alleges that defendant "subjected him to a hostile work environment because of his sex (male), [and] disability," *see* Compl. ¶ 1, but Count IV (the hostile work environment count) only alleges that defendant "subjected him to a hostile work environment [on the] basis of his sex," *see* Compl. ¶ 34.  For purposes of this motion, the Court will assume plaintiff has properly alleged both claims.  It is also unclear whether plaintiff's hostile work environment claim is discrimination-based or retaliation-based, *see, e.g.*, *Harris v. Wackenhut Servs., Inc.*, 419 Fed. App'x 1, 1 (D.C. Cir. 2001), but this does not affect the Court's analysis because the legal standard is the same for either theory, *Baloch*, 550 F.3d at 1201, citing *Harris*, 510 U.S. at 12.

*Workers Union of Am.*, 383 F. Supp. 2d 60, 79 (D.D.C. 2005) (emphasis added), *aff'd* 187 Fed. App'x. 1 (D.C. Cir. 2006); *Wade v. District of Columbia*, No. 08-1187, 2011 WL 1491075, at *19 (D.D.C. Apr. 20, 2011); *Nunridden v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009); (dismissing plaintiff's hostile work environment claim because plaintiff only sought "to transform challenges to discrete acts of alleged discrimination or retaliation . . . into a hostile work environment claim by combining those events with a series of ordinary workplace difficulties"); *see also Nat'l R.R.*, 536 U.S. at 115 (noting that hostile work environment claims are "different in kind from discrete acts," in that they must be "based upon the cumulative effect of individual acts").

Plaintiff, in alleging that defendant "subjected him to a hostile work environment because of his sex (male) [and] disability," merely relists the same five adverse employment actions alleged in his discrimination and retaliation claims. Compl. ¶¶ 1, 34. He says nothing about the nature of these disparate acts that would permit this Court to "transform" them into a hostile work environment claim. For example, plaintiff alleges that being "yelled at" by Mr. Jernigan at his PIP meeting contributed to his hostile work environment. Compl. ¶ 34. But plaintiff only cites this one occasion, whereas the "very nature" of hostile work environment claims "involves repeated conduct." *Nat'l R.R.*, 536 U.S. at 115. Moreover, plaintiff does not allege that the yelling was physically threatening or humiliating and, in saying nothing at all about the content or manner of the yelling, gives the Court no basis for inferring that it was anything more than offensive to plaintiff. *See Harris*, 510 U.S. at 21 ("[M]ere utterance of an . . . epithet which engenders offensive feelings in a[n] employee does not sufficiently affect the conditions of employment to implicate Title VII[.]") (internal quotation marks and citations omitted).

Similarly, plaintiff fails to elaborate upon the nature of the remaining four acts that he alleges created a hostile work environment: placement on the PIP, receipt of unfavorable feedback, being told he could not submit any more assignments, and placement on the POP. Compl. ¶ 34.  And as defendant points out, courts typically do not find these types of "work-related actions by supervisors" to be sufficient for a hostile work environment claim.  *See Wade*, 2011 WL 1491075, at *19, citing *Nunridden*, 674 F. Supp. 2d at 94 ("[T]he removal of important assignments, lowered performance evaluations, and close scrutiny of assignments by management cannot be characterized as sufficiently intimidating or offensive in an ordinary workplace context.").

Thus, because plaintiff has not alleged anything beyond the discrete workplace actions alleged in his discrimination and retaliation claims and has failed to allege facts sufficient to establish that these acts were severe or pervasive enough to constitute a hostile work environment, his hostile work environment claims do not survive defendant's motion to dismiss.

## IV.    CONCLUSION

For the foregoing reasons, the Court will deny defendant's motion to dismiss as to Counts I, II, and III, and grant its motion to dismiss as to Count IV.  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  March 21, 2012